IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DENNIS ROGER PUCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 119-220 |
| | ) | |
| EDWARD PHILBIN; CONNIE MELCHERT; | ) | |
| DR. ALSTON; DR. MACOMSON; | ) | |
| AUGUSTA UNIVERSITY; GEORGIA | ) | |
| DEPARTMENT OF CORRECTIONS; | ) | |
| and MANUFACTURER OF DEVICE | ) | |
| in neck, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because Plaintiff is proceeding IFP, his amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.    SCREENING AMENDED COMPLAINT**

    **A.    BACKGROUND**

Plaintiff lists the following as Defendants in the portion of the complaint form reserved for such designations: (1) Edwin Philbin, ASMP Warden; (2) Connie Melchert, ASMP Director

of Inmate Medical; (3) Dr. Macomson, neurosurgeon employed by ASMP and Augusta University; and (4) the Manufacturer of spinal device in Plaintiff's neck. (Doc. no. 13, pp. 2-3.) In the caption of an attachment to the amended complaint, Plaintiff also list as Defendants: Dr. Alston, Augusta University, and Georgia Department of Corrections ("DOC"). (Id. at 13.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Dr. Macomson performed spinal fusion surgery on Plaintiff at Augusta University in June of 2016. (Id.) In January of 2018, Plaintiff began experiencing pain, numbness, and tingling in his left arm and hand, along with neck pain. (Id.) When Plaintiff met with Dr. Macomson in February of 2018, the doctor told Plaintiff the screws had come loose, but he would not operate on Plaintiff because of issues with Plaintiff's breathing. (Id. at 14.) Dr. Macomson ordered a CT myelogram for Plaintiff, but the test was not performed until June 2018. (Id.) Plaintiff did not receive any pain medication in the interim. (Id.) Plaintiff wrote a letter to Dr. Alston about his condition in September of 2018, but she did not respond. (Id.)

Plaintiff met again with Dr. Macomson, who again refused to operate on Plaintiff but did request Plaintiff go to the Augusta University Pain Clinic. (Id.) On November 14, 2018, Plaintiff filed a grievance to Warden Philbin, who rejected it on November 30, 2018, even though he never interviewed Plaintiff or gave a reason for rejecting the grievance. (Id.) Plaintiff filed an appeal of the rejection to the Georgia DOC, but that appeal was rejected in April of 2019. (Id. at 14-15.)

By January of 2020, Plaintiff felt the device "grab meat" in his neck when he turned his head, which caused Plaintiff severe balance problems, nerve damage in his left side, and

2

worsening of his condition that caused him to have to use a wheelchair. (Id. at 15.) Plaintiff asserts Defendants Philbin, Alston, and Melchert have ignored his pleas for help, and he blames Dr. Macomson, and his employer Augusta University, for putting the device in his neck. (Id. at 15.) He also alleges liability by the device manufacturer for making a device that came loose and "failing to remedy the situation." (Id.)

Plaintiff wants the device fixed or removed. (Id. at 16.) Plaintiff also seeks compensatory and punitive damages. (Id. at 5, 6.)

### B. DISCUSSION

#### 1. Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

3

That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Claim Against Augusta University or the Georgia Department of Corrections

"Augusta University exists and operates solely as a unit of the Board of Regents of the University System of Georgia." Sholes v. Anesthesia Dep't, CV 119-022, doc. no. 27, p. 8 (Hall, C.J.) (citing Ga. Const. art. VIII, § 4, ¶ 1(b); O.C.G.A. § 20-3-1; McCafferty v. Med. Coll. of Ga., 287 S.E.2d 171, 174 (Ga. 1982), *overruled on other grounds by* Self v. City of Atlanta, 377 S.E.2d 674 (Ga. 1989).)  Thus, Augusta University and its various departments are not entities capable of being sued.  See McCafferty, 287 S.E.2d at 174; see also Bowers v. Bd.

4

of Regents of Univ. Sys. of Ga., No. 1:11-CV-228-ODE, 2012 WL 12893538, at *5 n.12 (N.D. Ga. Mar. 20, 2012) (recognizing "[l]egal capacity to be sued is determined according to state law" and "[t]he Georgia Supreme Court has established that MCG is not an entity that is capable of suing or being sued").  Therefore, Augusta University is not a proper Defendant.

However, even if Plaintiff had named the correct entity, he has not connected it to any alleged constitutional violation.  The Eleventh Circuit has held that a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation.  Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").  Thus, Plaintiff must describe how each individual participated in any alleged constitutional violation or other acts and omissions he claims to have caused him injury.

Here, although Plaintiff lists Augusta University in the caption of his attachment to the amended complaint, he only mentions it as the employer of Dr. Macomson or the Augusta University Medical Center as the location where he saw Dr. Macomson.  Moreover, as explained in Section I(B)(3), *infra*, an employer cannot be sued under § 1983 simply on a theory of *respondeat superior*.  In sum, even if Augusta University were properly named as a Defendant, Plaintiff does not connect it to any alleged constitutional violation, and it should be dismissed.

Likewise, as to the Georgia DOC, Plaintiff lists this entity in the caption of the attachment to the amended complaint, but the only mention of the DOC in the statement of

5

claim is that Plaintiff submitted a grievance appeal to it. Under Eleventh Circuit law, "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure." Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (*per curiam*). Thus, any claim that the DOC mishandled Plaintiff's grievance or improperly denied a grievance fails to state a claim upon which relief may be granted. See id.; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.").

Moreover, even if Plaintiff had stated a claim based on his grievance, which he has not, "[t]he Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Arms or agencies of the state are also immune from suit. Alabama v. Pugh, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit."); Stevens, 864 F.2d at 115 (Eleventh Amendment bars suit against GDC); Bailey v. Silberman, 226 F. App'x 922, 924 (11th Cir. 2007) (*per curiam*) ("Neither a State nor its agencies may be sued as a named defendant in federal court absent the State's consent."). Accordingly, the DOC should be dismissed from the case.

### 3. Plaintiff Fails to State a Claim Against Defendants Philbin, Melchert, or Alston

Plaintiff fails to state a claim for relief against Warden Philbin or Medical Director

6

Melchert based on their supervisory positions. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendant Philbin or Melchert liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff appears to name these two individuals as Defendants not because of their direct involvement in the events about which he complains, but by virtue of their supervisory positions at ASMP. Concerning the Warden, Plaintiff states, "Edward Philbin is supposed to care about the welfare of inmates." (Doc. no. 13, p. 15). As to Defendant Melchert, Plaintiff identifies her not as a doctor, but as a department director who did not answer a letter. (Id. at 2, 15.)

7

Nowhere does Plaintiff allege Defendant Philbin or Melchert were present for, or participated in, Plaintiff's medical treatment. Nor does he allege either Defendant was responsible for examining Plaintiff or making any determination about the timing or type of treatment for Plaintiff. Courts have recognized that supervisory prison officials who are not medical professionals are entitled to rely on the decisions of trained medical practitioners regarding care provided to inmates. See Williams v. Limestone Cty., Ala., 198 F. App'x 893, 897-98 (11th Cir. 2006) (*per curiam*); Rutledge v. Lift, CV 307-055, 2009 WL 2842739, at *8 (S.D. Ga. July 22, 2009) (citing Waldrop v. Evans, 681 F. Supp. 840, 848-49 (M.D. Ga. 1988)), *adopted by* 2009 WL 2900276 (S.D. Ga. Sept. 3, 2009) (Bowen, J.).

Nor can Plaintiff establish these supervisory Defendants were directly involved with his medical care by alleging they ruled on a grievance or otherwise received a letter from Plaintiff. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (*per curiam*) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Blackerby v. McNeil, No. CV 307-071, 2008 WL 2047814, at *1-2 (S.D. Ga. May 13, 2008) (dismissing claim against prison official who allegedly failed to act in accordance with the plaintiff's wishes concerning information in a grievance and a letter); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*,

530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Nor has Plaintiff alleged the requisite causal connection between Defendant Philbin or Melchert and the asserted constitutional violation.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'"  Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).  The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences."  Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not draw the necessary causal connection to any alleged constitutional violation.  Plaintiff has not alleged (1) a history of widespread abuse regarding improper

9

medical treatment at ASMP, (2) an improper custom or policy put in place by either Defendant regarding medical treatment, or (3) an inference either of these supervisory Defendants directed prison employees to act, or knew they would act, unlawfully.  At best, Plaintiff has alleged he made a one-time notification via a grievance or a letter to Defendants Philbin and Melchert about problems with the device in his neck.  As explained above, Warden Philbin cannot be held liable based on the manner in which he addressed Plaintiff's grievance, see Bingham, 654 F.3d at 1177-78, and writing a letter to Defendant Melchert is insufficient to impose liability.  See Blackerby, 2008 WL 2047814, at *1-2; Crowder, 687 F.2d at 1005-06.  In sum, Plaintiff has not shown Defendant Philbin or Melchert actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation.  Therefore, Plaintiff fails to state a claim upon which relief can be granted against these two supervisory officials, and Defendants Philbin and Melchert should be dismissed from this case.

As to Defendant Alston, Plaintiff does not provide any information about her role in this case other than he wrote one letter to her about his circumstances, and she did not respond.  Although Plaintiff identifies her title as doctor, he provides no indication she had anything to do with his medical treatment or any policy-making role with respect to the provision of medical treatment at ASMP.  Even if this Defendant had been identified as some sort of supervisor, the dearth of information provided about her shows Plaintiff cannot satisfy the requirements recounted above for imposing supervisory liability, and receipt of one letter likewise cannot result in the imposition of liability.  Thus, Plaintiff fails to state a claim for relief against Defendant Alston, and she should be dismissed.

10

### 4. Plaintiff Fails to State a Claim Against the Manufacturer of the Medical Device in His Neck

Plaintiff also fails to state a claim against the unnamed manufacturer of the device in his neck. He appears to allege liability should be imposed based solely on the fact the device came loose after it had been implanted. However, to state a such a claim for a design defect, "under both Georgia law and the Federal Rules of Civil Procedure, [Plaintiff must make] an allegation of specific design defects from which the Court can draw a reasonable inference that at least one of the defects caused Plaintiffs injuries." Schmidt v. C.R. Bard, Inc., No. 6:14-CV-62, 2014 WL 5149175, at *4 (S.D. Ga. Oct. 14, 2014). Plaintiff's only mention of the device is a statement that it can come loose, and he wants the unidentified manufacturer "to remedy the situation." (Doc. no. 13, p. 15.) Such a conclusory allegation cannot satisfy the pleading requirements of a design defect claim. Moreover, a most liberal construction of Plaintiff's claims shows he has not alleged the duty, breach, causation, and injury elements of a negligence claim, or alleged the manufacturer breached a duty to warn about a risk that is the proximate cause of Plaintiff's alleged injury. See Wheat v. Sofamor, S.N.C., 46 F. Supp. 2d 1351, 1360-64 (N.D. Ga. 1999) (reviewing Georgia pleading requirements for design defects, negligence, and failure to warn claims). Thus, the Manufacturer should be dismissed.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants Augusta University, Georgia Department of Corrections, Philbin, Melchert, Alston, and the Manufacturer of the device in Plaintiff's neck be **DISMISSED** from this case because Plaintiff fails to state a claim against them upon which relief can be granted. By separate Order, the Court directs service of process on Defendant Macomson based on Plaintiff's

11

deliberate indifference allegation against the doctor based on post-operative treatment starting in 2018.

SO REPORTED and RECOMMENDED this 2nd day of April, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA