IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DENNIS ROGER PUCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 119-220 |
| | ) | |
| SAMUEL D. MACOMSON, M.D.,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at Augusta State Medical Prison in Grovetown, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case, filed pursuant to 42 U.S.C. § 1983. Before the Court are Defendant's motion for summary judgment and Plaintiff's opposition thereto. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 33), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

**I.     PROCEDURAL BACKGROUND**

Plaintiff originally named seven Defendants in his complaint. (Doc. no. 1.) However, as Plaintiff is proceeding IFP, the Court screened the complaint and because of pleading deficiencies, directed Plaintiff to amend his complaint. (Doc. no. 12.) Plaintiff submitted his

---

[1]The Court **DIRECTS** the **CLERK** to update Defendant's name on the docket in accordance with the caption of this Order, which is consistent with his Declaration in support of his motion for summary judgment. (<u>See</u> doc. no. 33-2.)

amended complaint, this time naming only four Defendants. (Doc. no. 13.) The Court dismissed three Defendants, and directed the United States Marshals Service to serve Defendant Macomson based on Plaintiff's Eighth Amendment medical deliberate indifference claim based on the doctor's post-operative treatment of Plaintiff starting in 2018. (See doc. nos. 14, 15, 23.)

The case proceeded through the standard discovery period, during which Defendant took Plaintiff's deposition. (Doc. no. 33-1, Pl.'s Dep.) Dr. Macomson timely filed his motion for summary judgment, and the Clerk issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. no. 36.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.[2]

In accordance with Local Rule 56.1, Defendants submitted a Statement of Uncontested Facts ("SUF") in support of his summary judgment motion. (Doc. no. 34.) Because Plaintiff did not file a responsive statement, the Court deems admitted all portions of Defendant's statement having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56. See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to

---

[2]The Court also explained summary judgment motions, along with the rights and requirements associated with responding, in its April 2, 2020 Order. (Doc. no. 14, p. 6.)

evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).  Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

Plaintiff's opposition papers do not respond to each fact in the SUF and consist of unsworn, conclusory allegations, most of which are inadmissible evidence for purposes of opposing Defendant's motion for summary judgment.  See Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (requiring consideration of only admissible evidence when ruling on motions for summary judgment); see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding summary judgment appropriate where inmate produced nothing beyond "his own conclusory allegations" challenging actions of defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment.").  The Court will consider, where appropriate, the unchallenged medical requests and records Plaintiff attached to his opposition papers.[3]

---

[3] Plaintiff's interrogatories attached to his opposition, however, will not be considered.  Dr. Macomson's answers are not provided.  If Plaintiff is suggesting Dr. Macomson did not provide answers, that does not help him.  That Plaintiff chose not to pursue potential discovery issues during the designated discovery period does not excuse him from compliance with the rules governing discovery and summary judgment.  Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); see also Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants, 'we nevertheless have required them to conform to procedural rules.'").  Thus, Plaintiff may not avoid summary judgment based on belated claims about missing evidence.

(Doc. no. 38, pp. 21-42.)

Nevertheless, the Court is mindful it "must construe the facts and draw all inferences in the light most favorable to the nonmoving party and 'when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*.'" Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006) (citation omitted).) Moreover, Dr. Macomson, as movant, continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review Dr. Macomson's representation of the record, including Plaintiff's sworn deposition testimony and any factually supported opposition to the SUF, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II.   FACTS

Dr. Macomson is a neurosurgeon employed by Augusta University ("AU") who, as part of his employment with the State of Georgia, has treated patients at Augusta State Medical Prison ("ASMP"). (Def.'s Decl., doc. no. 33-2, ¶ 2.) As part of his contract work with ASMP prisoners, Dr. Macomson performed spinal fusion surgery on Plaintiff's neck in June of 2016. (Id.; Pl.'s Dep., pp. 14, 26; doc. no. 38, pp. 34, 40.) In January 2018, Plaintiff began experiencing numbness, tingling, and pain in his left arm, hand, and shoulder. (Pl.'s Dep., p. 14.)

Plaintiff had the first of two 2018 visits with Dr. Macomson in February or March of 2018, and Dr. Macomson ordered a CT myelogram for Plaintiff, which was performed in June

2018. (Id. at 15[4]; doc. no. 38, p. 35.) During this first visit in 2018, Dr. Macomson explained to Plaintiff that the screws holding in place the medical device he had implanted would come loose. (Pl.'s Dep., p. 16; see also doc. no. 38, pp. 33, 38 (medical record notes by ASMP Physicians' Assistant regarding loosening hardware and screws).) Dr. Macomson also told Plaintiff he did not want to perform additional surgery on Plaintiff because he was concerned, based on Plaintiff's breathing issues, about putting Plaintiff to sleep. (Pl.'s Dep., p. 16.) Although he ordered the CT scan, Dr. Macomson did not address Plaintiff's complaints of pain. (Id.) The results of that 2018 CT scan are not in the record.

Plaintiff continued to complain of pain at ASMP, (doc. no. 38, pp. 26-27), and he was scheduled for a second visit with Dr. Macomson in November of 2018, (id. at 37-38). At that second visit, Dr. Macomson recommended Plaintiff for the AU Pain Clinic. (Pl.'s Dep., pp. 15, 41; doc. no. 38, pp. 25, 38; Def.'s Decl. ¶ 5.) However, during neither of his two examinations of Plaintiff in 2018 did Dr. Macomson "observe hardware moving inappropriately in [Plaintiff's] neck, nor did [he] observe any damage to [Plaintiff's] muscle or bone from the hardware in his neck." (Def.'s Decl., ¶ 3.) Based on the imaging and tests performed, along with his examinations of Plaintiff, Dr. Macomson's medical opinion in 2018 was that "[Plaintiff] did not need surgery and that the screws in his neck were in stable

---

[4]Plaintiff testified this first visit occurred February 13, 2018, (Pl.'s Dep., p. 15), but the medical records indicate the visit occurred on March 13, 2018, (doc. no. 38, p. 35; see also Pl.'s Dep., 32). The discrepancy need not delay the Court because there is no dispute Dr. Macomson only saw Plaintiff twice in 2018, and after the first examination, he ordered a CT myelogram for Plaintiff. (Pl.'s Dep., p. 15.)

position." (Id. ¶ 4.)  Since the two visits with Dr. Macomson in 2018, a different neurosurgeon, Dr. Smith, treated Plaintiff in 2019 and 2020.  (Pl.'s Dep., pp. 21-22, 44.)

In addition to treatment by Dr. Macomson and Dr. Smith, Plaintiff has seen a number of different doctors at ASMP who treat Plaintiff's various medical conditions.  (Id. at 21, 23-26.)  Plaintiff has been diagnosed with chronic obstructive pulmonary disease and macular degeneration.  (Id. at 22, 43; doc. no. 38, p. 38.)  He has a slow heart rate which requires a pacemaker, and sometimes Plaintiff's heart stops beating for seven seconds at a time.  (Pl.'s Dep., pp. 22-23.)  Plaintiff's doctors include a neurologist, cardiologist, ophthalmologist, a general practitioner, pain specialist, and a physicians' assistant.  (Id. at 22-26.)  However, Dr. Macomson has nothing to do with Plaintiff's treatment by the other medical providers, and as a contractor is responsible only for the medical treatment he provides.  (Id. at 51-52.)

In addition, Plaintiff is bipolar and paranoid schizophrenic with Post Traumatic Stress Disorder and psychotic features, which he acknowledges causes him to wonder if the medical device in his neck is "going to paralyze me further or cut my spinal column."  (Id. at 10, 36.)  Dr. Macomson has averred the hardware in Plaintiff's neck will not cut his spinal cord.  (Def.'s Decl., ¶ 3.)  Plaintiff acknowledges no one has told him the device will cut his spinal cord, he has not read anything suggesting the device will cut his spinal cord, and no doctor has said he should have surgery on his neck.  (Pl.'s Dep., pp. 36, 42.)  Plaintiff does not know what is causing his pain, whether another surgery to tighten or remove the device in his neck would help, or whether leaving the device alone would cause further damage.  (Id. at 44-46.)

Plaintiff, who has a high school education and experience in construction and mechanics but no medical training or experience, bases his opinion about the problems with the device in his neck on reading the 1968 edition of the Encyclopedia Britannica and his experience as a mechanic working with screws, nuts, and bolts. (Id. at 6-8, 35, 38-39.) He testified that a general practitioner at ASMP, who prescribed a wheelchair for Plaintiff in 2020, told him the device in his neck caused him to require a wheelchair. (Id. at 37.) However, the medical order for the wheelchair in January 2020 does not state a reason for the order, (doc. no. 38, p. 42), and Plaintiff has not placed in the record any medical statement verifying his version of information from the general practitioner. Results from a March 24, 2020 CT scan show "solid interbody arthrodesis C3-C4," and "[s]table lucency around C5 pillar articular screws." (Id. at 30-31.) The record contains no medical recommendation for surgery or any other corrective action for "[l]oosening of the C5 pillar articular screws," and the 2020 test revealed "[s]table appearance of the cervical segments when compared to the 9/17/2019 CT examination." (Id. at 31.)

### III. DISCUSSION

Dr. Macomson argues he is entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claim, any official capacity claim for monetary damages is barred by the Eleventh Amendment, and Plaintiff is not entitled to injunctive relief. (See doc. no. 33.) Plaintiff argues summary judgment is not appropriate because Dr. Macomson, as the surgeon who placed the medical device in his neck, should perform corrective surgery to fix the pain and resultant worsening of his condition caused by the loose device in his neck. (See doc. nos. 38, 40.)

A.   **Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by

affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendant Is Entitled to Summary Judgment on the Merits of Plaintiff's Eighth Amendment Claim

#### 1. Deliberate Indifference Standard

The Eighth Amendment requires that prisoners are afforded adequate food, clothing, shelter, and medical care, and prison officials must take reasonable measures to ensure prisoner safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To survive Defendant's motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude (1) he had a serious medical need – the objective component, (2) Defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by Defendant's wrongful conduct. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (*per curiam*); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim). To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily

9

recognize the necessity for a doctor's attention." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

To satisfy the subjective component that Defendant was deliberately indifferent, Plaintiff must offer some proof that Defendant: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223. "A prisoner must show the defendant prison officials acted with a sufficiently culpable state of mind." Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004) (citations omitted). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).

Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986). Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of

treatment support a claim of cruel and unusual punishment. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*); Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment. Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . .").

In addition, a plaintiff alleging liability for deliberate indifference based on a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188, *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1243 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

      **2.**      **Defendant Macomson Is Entitled To Summary Judgment Because Plaintiff Merely Disagrees Concerning the Proper Course of Treatment**

Plaintiff cannot meet his burden of proof on any element of his deliberate indifference claim. First, Plaintiff argues that even though the CT scan results show the device in his neck is stable, the loose device grinds, moves, and pops on the bones in his neck when he turns his head. (Doc. no. 38, p. 2.) To satisfy the objective component of his claim showing a serious

11

medical need, Plaintiff must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326.  There is no dispute about the absence of any medical opinion mandating further surgery on Plaintiff's neck.

Indeed, Plaintiff concedes he does not know what is causing his pain, whether another surgery to tighten or remove the device in his neck would help, or whether leaving the device alone would cause further damage.  (Id. at 44-46.)  Plaintiff's reversal of position in his opposition papers, wherein he argues the loose device is the cause of his neck pain, Plaintiff cannot defeat summary judgment.  When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of mater fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984); see also Bryant v. U.S. Steel Corp., 428 F. App'x 895, 896 (11th Cir. 2011) (*per curiam*) (affirming district court's disregard of affidavit submitted to avoid summary judgment that "squarely contradicted unequivocal testimony [the plaintiff] gave on deposition").

Moreover, Plaintiff's initial complaints about neck pain did result in obtaining medical treatment, just not the treatment he prefers, as discussed in detail below.  Thus, even if the Court were to assume for the sake of argument Plaintiff's neck pain - as opposed to a need for surgery that no medical provider has opined is necessary - qualifies as a serious medical need, he cannot show Dr. Macomson was deliberately indifferent to such a need.

Second, as to the subjective component, Plaintiff cannot show Dr. Macomson was subjectively aware of a serious risk to Plaintiff's health that he disregarded by acting in a manner that constituted "more than mere negligence." Melton, 841 F.3d at 1223. The facts alleged by Plaintiff during his deposition, when coupled with facts proffered by the defense that Plaintiff has not disputed, establish beyond peradventure Defendant was not deliberately indifferent.

There is no additional medical information provided and no medical opinion or information challenging the course of treatment provided by Dr. Macomson in 2018, let alone showing that Plaintiff needed neck surgery in 2018 - - or even in 2020 when a general practitioner ordered a wheelchair for Plaintiff and he had another CT scan. "Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment." Howard v. Memnon, 572 F. App'x 692, 695 (11th Cir. 2014) (*per curiam*) (citing Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990)); see also Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) ("[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial.").

The record indisputably establishes Plaintiff has myriad physical and mental issues for which he sees a team of medical providers. (Pl.'s Dep., pp. 10, 22-26, 36, 43.) However, Plaintiff has produced no evidence to contradict the medical decisions made by Dr. Macomson not to operate on Plaintiff's neck in 2018 and to address Plaintiff's pain by sending him to the

AU Pain Clinic.  To be sure, Plaintiff is unhappy with the pain he experiences, and he is unhappy with how prison officials have handled his complaints:

> Well, they refused to fix this thing five times, back with Dr. Macomson twice and Dr. Smith three times, and nobody will give me any pain medication, I've only been to the pain clinic once in two years, in a year and nine months, and have had no physical therapy since I've been in the wheelchair.  It seems like there - -  it might just be these people at the prison itself, they seem like they're indifferent to my plight, they seem callous and - - they seem callous and coldhearted about the fact that I'm in constant pain all the time, that I can't sleep through the night.

(Pl.'s Dep., p. 40.)

The only Defendant left in the case is Dr. Macomson, who has nothing to do with treatment Plaintiff receives from any other medical providers, and who ordered a CT myelogram after the first examination in early 2018 and facilitated Plaintiff's access to the AU Pain Clinic after the November 2018 visit.  (Pl.'s Dep., pp. 15-16, 51-52.)  Indeed, the Health Services Request Forms and grievance information Plaintiff submitted show only that he complained to various officials at the prison about ongoing problems with his neck; the record does not show Dr. Macomson ever received any of these complaints, many of which post-date the last time Dr. Macomson saw Plaintiff in November of 2018.  (See generally doc. no. 38, pp. 20-38.)

Moreover, Plaintiff's submission of medical records from 2020 showing continuing issues with his neck and an order for a wheelchair does not save his claim.  There is no indication of the reason for the wheelchair order.  (Id. at 42.)  Although the CT scan results show "[l]oosening of the C5 pillar articular screws," they also show "[s]table lucency" around those screws and "[s]table appearance of the cervical segments" when compared to a

14

September 2019 CT examination. (Id. at 30-31.) There is no medical recommendation in the record for additional surgical action. Plaintiff concedes no one has told him the device will cut his spinal cord, he has not read anything suggesting the device will cut his spinal cord, and no doctor has said he should have surgery on his neck. (Pl.'s Dep., pp. 36, 42.)

Indeed, as explained above Plaintiff does not know why his pain has increased and condition worsened over time, (Pl.'s Dep., pp. 44-46), let alone does he have any evidence Dr. Macomson's actions in 2018 are the cause of his current circumstances. His unsupported, conclusory allegations to the contrary in his opposition papers are insufficient, particularly in light of his sworn deposition testimony. See Van T. Junkins and Assoc., Inc., 736 F.2d at 657; see also Bryant, 428 F. App'x at 896. Therefore, Plaintiff's claim also fails because he does not offer any evidence he was injured by Dr. Macomson's acts or omissions with respect to the course of treatment selected in 2018 or any delay in providing surgery no medical provider has mandated. See Cannon v. Corizon Med. Servs., 795 F. App'x 692, 698 (11th Cir. 2019) (*per curiam*); see also Whitehead v. Burnside, 403 F. App'x 401, 404 (11th Cir. 2010) (*per curiam*) (explaining prisoner plaintiff's "personal belief regarding the severity of his injury is not sufficient to overcome the medical opinions" of record and mere difference of opinion as to appropriate treatment for injury, absent any evidence to refute contemporaneous medical records regarding treatment, are insufficient to avoid summary judgment).

The crux of Plaintiff's Eighth Amendment claim is that he believes Dr. Macomson should have followed a different course of treatment following the two examinations of Plaintiff in 2018. However, as explained above and repeatedly applied in the Eleventh Circuit:

> A plaintiff cannot establish deliberate indifference simply by second guessing the conclusions reached by a prison medical official in the exercise of his medical judgment. Indeed, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Bismark v. Fisher, 213 F. App'x 892, 896 (11th Cir. 2007) (*per curiam*); see also Butler v. Prison Health Servs., Inc., 294 F. App'x 497, 499 (11th Cir. 2008) (*per curiam*) (same). Indeed, the Court should not second-guess medical judgments, particularly where, as in this case, an inmate's health concerns received significant medical attention. See Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013) (*per curiam*).

In sum, Plaintiff cannot meet his burden of proof for any of the elements of his deliberate indifference claim, and Dr. Macomson is entitled to summary judgment. Because Dr. Macomson is entitled to summary judgment on the merits of Plaintiff's claim, the Court need not address Dr. Macomson's remaining arguments regarding the types of damages sought by Plaintiff. Cf. Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (*per curiam*) (recognizing no need to address qualified immunity defense when summary judgment granted on substance of deliberate indifference claim); Woods v. United States Steel Corp., Case No. 2:17-cv-00883-RDP, 2018 WL 6067502, at *4 (N.D. Ala. Nov. 20, 2018) (rejecting damages and injunctive relief claims outright where no viable claim survives dispositive motion).

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 33), a final judgment be

entered in favor of Defendant, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 13th day of April, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA